**SIGNED this 18th day of September, 2015**

_____Shelley D. Rucker_____
Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Rodney Maurice Hill, Sr.** | ) | No. 1:14-bk-15544-SDR |
| **Sonya Roche Hill** | ) | Chapter 13 |
| | ) | |
| **Debtors** | ) | |

## MEMORANDUM OPINION

The motion to reconsider this court's order denying the motion for a show cause order filed by the debtors, Rodney and Sonya Hill, was heard on September 3, 2015. [Doc. No. 108]. The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B). For the reasons stated below, the court will deny the debtors' motion.

### I. Background Facts and Procedural History

The debtors are proceeding pro se after dismissing their attorney, and the court has granted them considerable leeway with their pleadings and with their compliance with local rules

1

in an attempt to understand their arguments. The filings in this case have been somewhat unorthodox and require explanation. The debtors live in a home leased from Mr. and Mrs. Otto Boehm. The lease agreement contains an option to purchase. Over the years, the lease has been in default, terminated, reinstated, and in default again, and a cure for the current arrearage has been provided for in the debtors' Chapter 13 plan. The debtors, while still represented by counsel, withdrew an objection to the arrearage claim filed by Mr. Boehm. The debtors also filed an agreed order resolving that objection and a motion for relief from the automatic stay that had also been filed by Mr. Boehm. The agreed order provided for regular payments to Mr. Boehm pursuant to the debtors' confirmed Chapter 13 plan.

After entry of that order, the debtors tendered a "bill of exchange" to Mr. Boehm and the Chapter 13 trustee with instructions on how both parties should take the documents tendered to the United States Treasury for payment in full of the debtors' obligations. Neither Mr. Boehm nor the trustee did so based on their belief that the items tendered had no value. When no response came back from Mr. Boehm or the trustee, the debtors took the position that they had tendered payment in full, that the tender had been rejected, and that the rejection of a tendered payment resulted in a discharge of their obligations to pay Mr. and Mrs. Boehm and the Chapter 13 trustee their payments under their Chapter 13 plan.

The debtors then filed pro se a motion seeking an order to require Mr. Boehm and the Chapter 13 trustee to show cause why their claims had not been discharged. [Doc. No. 84]. The court conducted an evidentiary hearing on June 26, 2015. The court entered an order on June 30, 2015, denying the motion on the basis that the bill of exchange was not legal tender having value

and that it was not acceptable for satisfaction of the payments due under the confirmed Chapter 13 plan or the payment of the claim of Mr. Boehm. [Doc. No. 105].

On July 8, 2015, the debtors filed this motion asking the court to reconsider its June 30, 2015 ruling.[1] [Doc. No. 108]. On August 12, 2015, the Chapter 13 Trustee filed a reply [Doc. No. 147], and on August 13, 2015, the Boehms filed a reply. [Doc. No. 149]. A hearing was held on September 3, 2015. The court has considered the motion to reconsider and has determined that the motion will be denied for the reasons stated below.

## II.  Standard of Review

Motions for reconsideration are construed as motions to alter or amend judgment under Rule 59 of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Rule 9023 of the Federal Rules of Bankruptcy Procedure. A court may grant a motion to alter or amend judgment only if there was: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Am. Civil*

---

[1] The debtors attached the following exhibits to their motion: (a) a copy of the opinion in the case of *U.S. Bank N.A. v. Phillips,* 852 N.E.2d 380 (Ill. App. Ct. 2006) (affirming the trial court's refusal to acknowledge a defendant's bill of exchange, which had been tendered to a creditor and could allegedly be processed by mailing it to the United States Treasury Department where plaintiff had established a "Personal Treasury UCC Contract Trust Account," as a negotiable instrument having value); (b) a collective exhibit containing a motion to stay order denying Bank One, N.A., Trustee's motion for summary judgment in the case of *Bank One, N.A. as Trustee v. Robert E. Ward et al.*, Case no. 2001 31518 CICI in the Circuit Court of the 7th Judicial District, Volusia County, Florida, ("Bank One case") and a transcript from the hearing in which the motion was argued; (c) a copy of the opinion in the case of *Waldron v. Delffs*, 988 S.W.2d 182 (Tenn. Ct. App. 1998) (addressing whether a promissory note having no named payee met the requirements of Tenn. Code Ann. § 47-3-104 to be a negotiable instrument in a motion for a judgment on the pleadings); (d) an unattributed discussion of consideration and contract terms; and (e) the Promissory Note and Agreement signed by the debtors and Mr. and Mrs. Boehm following the judgment obtained by the Boehms following the debtors' default under their Lease With an Option to Purchase. [Doc. Nos. 108-1 – 108-5].

*Liberties Union of Kentucky v. McCreary Cnty., Ky.*, 607 F.3d 439, 450 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)).  Motions for reconsideration "are 'not an opportunity to re-argue a case' and should not be used by the parties to 'raise arguments which could, and should, have been made before judgment issued.'" *In re SCBA Liquidation, Inc.*, 485 B.R. 153, 160 (Bankr. W.D. Mich. 2012) (quoting *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir.1998); *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir.1992)).  "The burden is on the party seeking reconsideration to demonstrate the existence of manifest errors of fact or law." *In re Watson*, 102 B.R. 112, 113 (Bankr. S.D. Ohio 1989) (citations omitted).

### III. Analysis

The debtors' motion to reconsider does not assert that there has been an intervening change in controlling law or that there is newly discovered evidence.  The closest ground asserted is that the court committed a clear error of law and needs to change its ruling to prevent a manifest injustice.  The debtors contend that the court did not give "sufficient attention" to their case and was "inattentive" to their arguments in its order dismissing the motion to show cause. [Doc. No. 108].  The substance of the debtors' motion to reconsider is largely a restatement of the arguments they made in their original motion to show cause with an attempt to find some value for their bill of exchange. To the extent that the debtors have attached case law to their motion to reconsider, none of the materials support the debtors' contentions. In fact, the first exhibit is a case directly on point, finding that a "bill of exchange" is not a negotiable instrument that discharges a debt and that the alleged U.S. Treasury account upon which it is drawn has no value. *See U.S. Bank N.A. v. Phillips,* 852 N.E.2d 380 (Ill. App. Ct. 2006).

The debtors maintain that the bill of exchange they tendered is drawn upon a U.S. Treasury account in their name to which they have access. They believe that by tendering this bill of exchange they satisfied the debt they owe the creditors. The debtors espouse beliefs that are rooted in a theory which is often referred to as "Redemptionist" theory and which has been overwhelmingly rejected by courts across the country. *See In re Barnes*, 2010 WL 3895463, at *5 (Bankr. E.D. Mo. 2010).

> Redemptionist theory is convoluted but essentially:
>
> propounds that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in 1933, and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman.

*Monroe v. Beard*, 536 F.3d 198, 203 n.4 (3d Cir. 2008). Redemptionist theory also professes that, "when the United States Government 'pledged the strawman of its citizens as collateral for the country's debt' . . . it created an 'exemption account' for each citizen, identified by each person's Social Security number." *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 210 (D. Conn. 2010) (citing *Monroe*, 536 F.3d at 203 n.4; *Bryant v. Wash. Mut. Bank*, 524 F. Supp. 2d 753, 758-61 (W.D. Va. 2007)). As the *McLaughlin* court explained:

> When citizens contract for debt, the theory goes, their debts are collateralized by their respective exemption accounts, essentially making the U.S. Government ultimately responsible for satisfaction of their debts. [*See Bryant*, 524 F. Supp. 2d at 759]. Moreover, each citizen's exemption account is virtually bottomless, meaning that those who understand this theory – and who file the appropriate UCC financing statements, and thereby become a free sovereign, a process known as "redemption," *see id.* – never have to actually pay for anything. *See, e.g., Dinsmore – Thomas v. Ameriprise Fin., Inc.*, No. 08CV587, 2009 WL 2431917, at *6 (C.D. Cal. Aug. 3, 2009); *Ray v. Williams*, No. CV04863, 2005 WL 697041, at *5 (D. Ore. Mar. 24, 2005) (describing the "Redemptionist" philosophy, whose

>   adherents "assign an imaginary account number to some sort of direct treasury account, advocate that this direct treasury account has a balance equal to the monetary value the government places on the life of the individual, and then charge against this direct treasury account through the use of fraudulent checks"); [*Ohio v. Lutz*, 2003 WL 152837, at *3 (Ohio Ct. App. 2003) ("By filing a UCC–1 financing statement, the flesh and blood person can make a claim against the assets obtained by the government from the 'strawman.'  The flesh and blood person Ronald Lutz, therefore, filed a UCC–1 financing statement against the assets earned by the 'strawman' RONALD LUTZ and held by the government. By filing this statement, the Redemptionists believe, the flesh and blood person can draw against the funds earned by the 'strawman.'").

*McLaughlin*, 726 F. Supp. 2d at 210 (footnote omitted).

Courts that have considered Redemptionist theory and other similar theories have routinely rejected them "as being frivolous and a waste of judicial resources." *In re Barnes*, 2010 WL 3895463, at *5 (citations omitted); *see also Barnes v. Citigroup, Inc.*, 2010 WL 2557508, at *4 (E.D. Mo. 2010); *In re Fachini* 470 B.R. 638, 641 (Bankr. M.D. Ga. 2012); *In re Hayes*, 2011 WL 4566378, at *3 (Bankr. S.C. 2011); *In re Harrison*, 390 B.R. 590, 594-95 (Bankr. N.D. Ohio 2008); *Blocker v. U.S. Nat'l Ass'n*, 993 N.E.2d 1154, 1157-58 (Ind. Ct. App. 2013); *Stevenson v. Bank of America*, 359 S.W.3d 466, 468 n.6. (Ky. Ct. App. 2011).  One court described the Redemptionist theory that debtors may issue a bill of exchange requiring the government to pay their debts out of secret trusts as being "equal parts revisionist legal history and conspiracy theory." *Bryant*, 524 F. Supp. 2d at 758.  Courts have consistently found that similar bills of exchange, notes, and letters of credit supposedly drawn on treasury accounts are not legal tender and are, in fact, nothing more than "worthless piece[s] of paper." *Id.; see also In re Walters*, 2015 WL 3935237, at *2 (Bankr. S.D. N.Y. June 25, 2015); *Blocker*, 993 N.E.2d at 1157-58; *McElroy v. Chase Manhattan Mortg. Corp.*, 134 Cal. App. 4th 388, 393 (Cal. Ct. App. 2005). Even the U.S. Treasury Department has warned the public about fraudulent bills of

exchange. *See* "Bogus Sight Drafts/Bills of Exchange Drawn on the Treasury," available online at http://www.treasurydirect.gov/instit/statreg/fraud/fraud_bogussightdraft.htm (last visited September 15, 2015) (noting that "bills of exchange drawn on the U.S. Treasury Department . . . have been used in an attempt to pay for everything from cars to child support" and explaining that "[a]ll these Bills of Exchange drawn on the U.S. Treasury are worthless." Indeed, the Treasury Department has warned that "[d]rawing such drafts on the U.S. Treasury is fraudulent and a violation of federal law." *Id.*

In short, the peculiar legal theories upon which the debtors' arguments are based have no basis in law. The debtors have included a number of filings and exhibits with their motion to reconsider; however, nothing the debtors have filed constitutes legal authority contrary to the court's prior finding.[2] *See, e.g., In re Cadillac by Delorean*, 262 B.R. 711, 718 (Bankr. N.D.

---

[2] Additionally, at the hearing on the motion to reconsider, the debtors attempted to argue that, because there was consideration for the contract with the Boehms, that contractual consideration would provide the value for the bill of exchange. The court finds this argument to be without merit. The mutual promises contained in the lease provide consideration to make the contract enforceable. Entirely different "consideration," in the form of payment, is required to discharge an obligation. An instrument such as a check or note may be tendered for payment. It discharges a debt because, by definition, it is an order for someone with the debtors' money to pay a specific amount of that money to the holder of the instrument. *See* Tenn. Code Ann. § 47-3-104(a). Money is defined as "a medium of exchange currently authorized or adopted by a domestic or foreign government." Tenn. Code Ann. § 47-1-201(24). In this case, there is no treasury account holding the debtors' money, and the debtors have offered no evidence that their bills of exchange are sanctioned as currency by the United States. *See id.* at Comment 24.

The debtors have also filed additional pleadings with the court in which they allege that they have the status of a national bank that may issue commercial paper that can be used to satisfy their debts. [Doc. No. 100, Exhibit B, at p. 6-7]. This seems to be an argument to make themselves into a government, which could then sanction the bills of exchange as currency. The court has considered these pleadings, which do not themselves seek specific relief, when considering the debtors' motion to reconsider. However, the court does not find these arguments and the accompanying authorities cited in these pleadings any more persuasive than the debtors' "treasury account theory."

Ohio 2001) (finding that "[t]he legal-looking citations" filed by parties espousing beliefs associated with Redemptionist theory "are misleading . . . [and] do not refer to any relevant law, but instead point the reader to 'laws' that never existed, to laws that may have existed at one time but are no longer in effect, or to laws that exist but do not provide any support whatsoever for the proposition for which they are cited."). The debtors have not met their burden, and the court finds no basis for reconsidering its earlier ruling. The court will enter a separate order denying the motion to reconsider.

# # #